# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LANA POTTER, )
)
              **Plaintiff,** )
)
v. )    Case No. 03-1326-WEB
)
HEALTH CARE AUTHORITY, )
*et al.*, )
)
)
)
             **Defendants.** )
_____ )

## MEMORANDUM AND ORDER

Presently before the Court is Defendant's Motion to Prohibit Plaintiff From Utilizing Expert Witness at Trial. (Doc. 87.) Plaintiff has responded to the motion (Doc. 89), and Defendant has filed a reply. (Doc. 91).

Defendant's motion generally seeks to prohibit Plaintiff from "utilizing any expert witnesses at trial or from designating any expert witnesses at this late date." (Doc. 87 at 1.) The motion specifically refers to Dr. David Papish, one of Plaintiff's treating physicians, and Dr. Richard Ruth, an economist. Plaintiff concedes that she "does not intend to call upon [Dr. Papish] to provide expert testimony; instead, Dr. Papish shall testify only as a treating physician, not as an expert specially retained for trial." (Doc. 89, at 1.) As such, the Court finds

that the issue regarding Dr. Papish is resolved.[1]  The status of Dr. Ruth as an expert is the only issue remaining for the Court to address.  After careful review of the submissions of the parties, the Court is prepared to rule.

## BACKGROUND

Plaintiff filed her Complaint against the various Defendants on September 15, 2003 (Doc. 1) alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Kansas Age Discrimination in Employment Act ("KADEA"), K.S.A. § 44-111, *et seq.*  Plaintiff also brings a claim for Defendant's alleged breach of implied employment contract.  She filed her Amended Complaint on September 19, 2003, raising the same causes of action.  (Doc. 3.)  On January 9, 2004, Plaintiff filed a Motion to Dismiss the City of Wellington and individually named Defendant Robert Miller.  (Doc. 9.)  This motion was granted on January 13, 2004.  (Doc. 10.)  The remaining Defendant, Health Care Authority d/b/a Sumner Regional Medical Center, filed its Answer on January 23, 2004, generally denying Plaintiff's allegations of discrimination and breach of contract.  (Doc. 11.)

---

[1] Nothing in this Order shall be construed to limit or prohibit Plaintiff's ability to illicit testimony from Dr. Papish (and/or introduce evidence) regarding his role as Plaintiff's treating physician.

The original Scheduling Order was entered on March 11, 2004. (Doc. 15.) It contained an expert deadline of May 28, 2004 for Plaintiff and June 30, 2004 for Defendant. *Id.* at 3. Plaintiff retained new counsel on March 31, 2004. (Doc. 19.) On motion by Defendant (Doc. 21), and over objection by Plaintiff (Doc. 22), the Scheduling Order was amended June 25, 2004. (Doc. 28.) The amended order set Plaintiff's expert disclosure deadline as October 14, 2004, with Defendant's deadline as November 30, 2004. *Id.* at 3.

The parties engaged in a telephone status conference with the Court on September 13, 2004, (Doc. 39, text entry), during which all unexpired deadlines from the Scheduling Order (Doc. 28) were vacated pending a mediation scheduled for October 27, 2004. The mediation did not result in a settlement and, thereafter, the parties continued to engage in discovery. A Final Scheduling Order (Doc. 68) was entered on September 20, 2005, containing an expert deadline of November 1, 2005, for Plaintiff and February 1, 2006, for Defendant. *Id.* at 3. The Order noted that experts would be limited to the issue of damages. It continued by stating, "[a]t the time of providing the expert disclosures, the disclosing party shall also provide three dates when the expert would be available for his/her deposition during the period from 30 to 60 days

following the expert disclosure." *Id.* (Emphasis in original). The Scheduling Order contains a discovery deadline of January 16, 2006. (Doc. 68, at 2.)

Plaintiff's counsel contacted defense counsel via e-mail on October 31, 2005, to request a two-week extension to provide an expert report, which was due the next day. Plaintiff's counsel responded, "I can designate him and produce his resume and list of cases but he has been out of town and does not have my report ready." (Doc. 87, Exh. A.) Defense counsel agreed to the extension, provided Plaintiff's counsel would agree to "a like extension on the other end if needed." *Id.* Despite Plaintiff's assurances, the promised information was not forthcoming. In fact, as of the filing of Defendant's motion on February 2, 2006, the expert's résumé, list of cases, report, and "other information required by Fed.R.Civ.P. 26(a)(2)" had yet to be provided – some three months after Plaintiff's expert deadline. (Doc. 87, at ¶ 3.)

The paralegal for defense counsel contacted plaintiff's counsel on November 14, 2005, via e-mail, and stated that defense counsel wanted to depose Dr. Papish (Plaintiff's treating physician) and "Dr. Ruh" (Plaintiff's proposed expert, whose name is actually Dr. Richard *Ruth*), proposing January 12 or 13, 2006. (Doc. 87, Exh. B.) On November 22, 2005, defense counsel sent a letter to Plaintiff's counsel stating she was "still awaiting the report of

[Plaintiff's] expert witness. You promised to at least send his CV. Please advise." (Doc. 87, Exh. C.) Defense counsel mentioned several dates set aside for depositions in December, as well as January 12 - 13, 2006, and stated that she "will want to depose Dr. Papish and Dr. Ruh [sic]." *Id.* Defense counsel again wrote to Plaintiff's counsel on December 7, 2005, noting that she "ha[d] not heard from [Plaintiff's counsel] about scheduling Dr. Papish and Dr. Ruh." (Doc. 87, Exh. D.)

Defendant contends, and Plaintiff does not dispute, that Plaintiff's counsel failed to respond to these "multiple requests" by defense counsel until sending an e-mail on January 10, 2006, (Doc. 87, ¶ 7.), stating that Plaintiff's counsel had "no idea who Dr. Ruh is, [but] assumed [defense counsel] meant Dr. Truong."[2] (Doc. 87, Exh. E.) Plaintiff's counsel inquired as to whether Defendant still intended to "go forward" with the depositions or if they had been cancelled. *Id.* The e-mail from Plaintiff's counsel made no mention of the status of Plaintiff's expert report, which was, by then, more than two months past due.

---

[2] Although neither party has explained the role of Dr. Truong, the Court surmises that he, like Dr. Papish, is one of Plaintiff's treating physicians.

Defense counsel responded by letter dated January 12, 2006, stating that she intended to take the depositions of Dr. Papish and "Dr. Ruh [sic]."  She also stated that she "understood Dr. Ruh [sic] was [Plaintiff's] expert economist, although [she] never received a report or other information and perhaps [she is] misspelling his name." (Doc. 87, Exh. F.)  Defense counsel indicated that she intended to file a Motion to Strike "any expert witness designation since the designation is now more than two months past due." *Id.*  Plaintiff's counsel replied by letter dated January 13, 2006, three days prior to the discovery deadline, thanking defense counsel for "clarifying that 'Dr. Ruh' is Dr. Richard Ruth..." (Doc. 87, Exh. G.)  Plaintiff's counsel indicated that he intended to file a motion to designate Dr. Ruth as an expert out of time and invited defense counsel to "respond as you feel appropriate." *Id.*  To date, Plaintiff has not filed such a motion.[3]

Defendant filed the present motion (Doc. 87) on February 2, 2006, almost three weeks after Plaintiff's counsel indicated he intended file a motion to designate out of time, (Doc. 87, Exh. G).  Defendant argues that Plaintiff should be prohibited from utilizing "any" expert witness at trial including, but not

---

[3] Instead, Plaintiff waited until she filed her response to Defendant's present motion to raise the issue of serving her expert report out of time.

limited to, Dr. Ruth, "[d]ue to the plaintiff's failure to designate an expert witness despite repeated reminders and requests to provide deposition dates, the passage of three months [at the time the motion was filed] since the original expert witness deadline, and the close of discovery." *Id.* at ¶ 13.

Plaintiff responded to Defendant's motion on February 16, 2006, mentioning "ambiguity" resulting from the cancellation of other depositions in the case and apparent confusion caused by defense counsel's reference to "Dr. Ruh" rather than Dr. Ruth. (Doc. 89.) Plaintiff's counsel attached Dr. Ruth's designation and report as exhibits to Plaintiff's response. (Doc. 89, Exh. A, B.)

Defendant replied on February 23, 2006, questioning the alleged "confusion" of Plaintiff's counsel regarding Defendant's request to depose Dr. Ruth. According to defense counsel, even though Plaintiff had not actually designated Dr. Ruth as an expert, "defendant requested on three different occasions that the deposition be scheduled" and "never ever" suggested that the deposition not be scheduled. (Doc. 91 at 4.) Defendant argued that Plaintiff's attempted expert designation is too late, would be prejudicial, and is incomplete. (Doc. 91, at 1-3.) Defendant also argued that Plaintiff failed to show "excusable neglect" for the failure to designate and has not formally moved to designate experts out of time. (*Id.* at 4 - 5.)

## **DISCUSSION**

Disclosure of expert testimony is controlled by Fed.R.Civ.P. 26(a)(2). The rule provides, in relevant part, that an expert disclosure shall

> be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(B). The rule further states that "[t]hese disclosures **shall** be made at the times and in the sequence directed by the court." Fed.R.Civ.P. 26(a)(2)(C) (emphasis added). As stated above, the Court's Final Scheduling Order set Plaintiff's expert disclosure deadline for November 1, 2005, which was informally extended two weeks by agreement between the parties. Plaintiff's counsel did not serve the Rule 26(a)(2) disclosures for Dr. Ruth until they were attached as exhibits to her response to the present motion. (Doc. 89, Exh. A, B.) Nor has Plaintiff's counsel moved to do so out of time, despite telling defense counsel he would.

Fed. R. Civ. P. 6(b) provides:

> When by . . . order of court an act is required or allowed to be done at or within a specified time, the court for *cause* shown may at any time in its discretion . . . upon motion made after the expiration of the specified period permit the act to be done where the failure to act was in the result of *excusable neglect*.

(Emphasis added.)  A showing of "good cause" requires a proffer of the reasons for the failure to meet the deadline.  **Burton v. R.J. Reynolds Tobacco Co.**, 203 F.R.D. 624, 629 (D. Kan. 2001) (citations omitted).

> The reason for the 'good cause' requirement for modification of a court's scheduling order is that such orders and their enforcement are regarded as the essential mechanism for cases becoming trial-ready in an efficient, just, and certain manner.  The control of these schedules is deliberately reposed in the court, and not in counsel, so that this end may be achieved.

**Rouse v. Farmers State Bank of Jewell, Iowa**, 866 F.Supp. 1191, 1198 (N.D. Iowa 1994), (citing **Public Citizen v. Liggett Group, Inc.**, 858 F.2d 775, 790 (1st Cir. 1988) *cert. denied*, 488 U.S. 1030, 109 S.Ct. 838, 102 L.Ed.2d 970 (1989)).

District Court of Kansas Local Rule 6.1 also addresses motions for extensions of time.  The rule "provides that an extension of time will not be granted unless the motion is made before the expiration of the specified time,

-9-

except upon a showing of excusable neglect." ***Howard v. TMW Enterprises, Inc.***, 32 F.Supp.2d 1244, 1254 (D.Kan. 1998). "Excusable neglect" is an elastic concept not limited to circumstances outside of the neglecting party's control. ***Burton***, 203 F.R.D. at 628 (citing ***Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship***, 507 U.S. 380, 392, 113 S. Ct. 1489, 1496, 123 L. Ed. 2d 74, 87 (1993)). The ***Pioneer*** Court noted that the common meaning of "neglect" is "'to give little attention or respect' to a matter, or...'to leave undone or unattended to *esp[ecially] through carelessness*.'" 507 U.S. at 388, 113 S.Ct. at 1494-95 (emphasis in ***Pioneer***) (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)); ***see also City of Chanute, Kansas v. Williams Natural Gas Co.***, 31 F.3d 1041, 1046 (10th Cir. 1994) (quoting ***Pioneer***). It is uncontested that Plaintiff's counsel neglected the expert deadline. The issue before the Court, therefore, is whether such neglect was excusable.[4]

In determining whether neglect is excusable, the Court should consider all of the circumstances surrounding the omission, including four specific factors: (1) prejudice to the other side, (2) the length and effect of any delay, (3)

---

[4] While Plaintiff has not filed a motion for leave to serve expert disclosures out of time, the Court will treat Plaintiff's response to the present motion as the functional equivalent of such a motion so that the Court can reach and consider whether Plaintiff should be allowed to serve these disclosures out of time due to excusable neglect.

the reasons for the omission and whether it was within the control of the party, (4) whether the neglecting party acted in bad faith.  ***Pioneer***, 507 U.S. at 395, 113 S. Ct. at 1498 (analyzing "excusable neglect" under Bankruptcy Rule 9006); ***Burton***, 203 F.R.D. at 628-9 (analyzing excusable neglect under Fed.R.Civ.P. 6).  *See also* ***City of Chanute***, 31 F.3d at 1046 (noting that fault in the delay remains a very important factor, but courts must look to the entire circumstances of the case).  When considering these factors, the balance weighs heavily, if not entirely, in the favor of Defendant.

Plaintiff's counsel contacted defense counsel and informally requested an additional two weeks to provide the expert report a day before Plaintiff's expert deadline.  In making this request, Plaintiff's counsel stated that he could "designate [the expert] and produce his resume and list of cases but he has been out of town and does not have my report ready."  (Doc. 87, Exh. A.)  Based on the information and arguments submitted by the parties, it appears that this initial delay in providing the report was not the fault, or within the control, of Plaintiff's counsel.

The Court is troubled, however, by the fact that Plaintiff's counsel did not, as promised, serve the designation or provide the résumé and list of cases. Despite subsequent inquiries from defense counsel, Plaintiff's counsel did not

submit the expert designation or report until attaching them as exhibits to Plaintiff's response to Defendant's motion on February 16, 2006 – some three months after the expiration of the two-week extension to which defense counsel agreed. (Doc. 89, Exh. A, B.)

Plaintiff argues that

> [a]s the report itself reflects, it was not finally prepared and submitted to counsel for Plaintiff until after the deadline for designation of experts had passed. As such, the ability to designate the expert within the deadline originally established by the Court was outside of the control of Plaintiff.

(Doc. 89 at 5.) The Court is not persuaded by this argument. It is a party's responsibility to keep their expert apprised of the pending expert deadline. If and when it became apparent to Plaintiff's counsel that Dr. Ruth would not be able to meet the Court-mandated deadline, Plaintiff's counsel had a duty to move the Court for additional time. In addition, Plaintiff still has failed to submit Dr. Ruth's list of cases (as promised on October 31, 2005; *see* Doc. 87, Exh. 1) and he has not included the compensation to be paid to Dr. Ruth for the study and testimony. Both categories of information are required to be disclosed by Fed.R.Civ.P. 26(a)(2). These delays and omissions are clearly attributable to Plaintiff's counsel.

The Court is not persuaded by the argument of Plaintiff's counsel that he did not know "who Dr. Ruh was..." (Doc. 89 at 2-3.)  If he was confused, he should have requested clarification long before January 10, 2006.  The Court also is not persuaded by any alleged "ambiguity" as to whether Defendant intended to go forward with certain depositions.  Even assuming such ambiguity existed, Plaintiff's duty to file an expert designation (and the information required by Fed.R.Civ.P. 26(a)(2)) was not dependent upon whether defense counsel intended to depose the expert.

In addition, Plaintiff's counsel does not provide any explanation to the Court as to why he failed to respond to defense counsel's November 22, 2005, inquiry regarding the status of the expert report – which, by then, was a week past the informal two-week extension to which defense counsel had agreed. (Doc. 87, Exh. C.)  Based on the information provided by the parties, Plaintiff's counsel did not communicate with defense counsel again until the afternoon of January 10, 2006.  (Doc. 87, Exh. E.)  Even then, Plaintiff's counsel chose not to address the status of his expert designation and report.  The Court, therefore, cannot find that Plaintiff's counsel acted in good faith.

The Court does find that Defendant would be prejudiced by allowing Plaintiff to designate a damages expert at this late stage in the proceedings.

Discovery is closed; mediation and the Pretrial Conference are looming. The Court is aware that mediation and the Pretrial have been rescheduled to accommodate the mediator. Even so, the Court is not prepared to allow Plaintiff to designate an expert past the discovery deadline and approximately six weeks before the Pretrial Conference under these circumstances.

Had Plaintiff's counsel been concerned about designating an expert out of time, he could have filed the requisite motion upon receipt of defense counsel's January 12, 2006, correspondence indicating Defendant's intention to file a Motion to Strike any expert designation. (Doc. 87, Exh. F.) At the latest, Plaintiff's counsel could have filed such a motion upon receipt of Dr. Ruth's report, which is dated January 17, 2006 – almost a month before Plaintiff's counsel submitted the report and designation, for the first time, as exhibits to the response to Defendant's motion. (Doc. 89, Exh. A, B.)

A "scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'" ***Rouse***, 866 F.Supp. at 1198 (quoting ***Gestetner Corp. v. Case Equip. Co.***, 108 F.R.D. 138, 141 (D.Me. 1985)). The only conclusion to be reached from the evidence and argument provided by the parties is that Plaintiff not only neglected, but disregarded the expert deadline contained in the Final Scheduling Order. After careful

consideration, the Court finds that Plaintiff's counsel has failed to establish good cause or excusable neglect for the failure to designate an expert witness or to file a motion for leave to do so.   Defendant's Motion to Prohibit Plaintiff From Utilizing Expert Witnesses at Trial (Doc. 87) is, therefore, GRANTED and Plaintiff is prohibited from designating any expert witnesses or utilizing any expert witness at trial.[5]

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 8th day of March, 2006.

    s/ Donald W. Bostwick
U.S. MAGISTRATE JUDGE

---

[5] The Court is compelled to note that Dr. Ruth is a damages, rather than a causation, expert.  Plaintiff's counsel contends that Dr. Ruth would "be offering testimony solely as to the calculation the lost wages and benefits suffered by Plaintiff as a result of her demotion and constructive discharge by Defendant." (Doc. 89 at 4.)  Simply stated, the exclusion of Dr. Ruth's opinions and testimony at trial will not prohibit Plaintiff from proving whether she was discriminated against and/or whether Defendant breached an implied employment contract. Testimony from Dr. Ruth might assist the trier of fact in calculating damages to be awarded, if any.  Plaintiff, however, is free to testify herself as to her lost wages and benefits.